IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WENDY PARADIS COLLINS,               )
                                     )
                Plaintiff,           )
                                     )
        v.                           )        1:18CV205
                                     )
ANDREW SAUL,                         )
Commissioner of Social Security,[1]  )
                                     )
                Defendant.           )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Wendy Paradis Collins ("Plaintiff") brought this action pursuant to Sections

205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)

and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social

Security denying her claims for Disability Insurance Benefits and Supplemental Security

Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits and

Supplemental Security Income Benefits on May 29, 2013, alleging a disability onset date of

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal
Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this
suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of
the Social Security Act, 42 U.S.C. § 405(g).

July 31, 2012 in both applications. (Tr. at 22, 164-80.)[2] Her applications were denied initially (Tr. at 75-84, 107-11) and upon reconsideration (Tr. at 85-106, 112-20). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 121-22.) On January 25, 2016, Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing. (Tr. at 22.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 35), and, on March 24, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 7-10).

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income

"The Commissioner uses a five-step process to evaluate disability claims." <u>Hancock</u>, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." <u>Id.</u>

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[4] Step four then requires the ALJ to assess whether, based on

---

Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1.

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.     DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since July 31, 2012, her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 24.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> congestive heart failure, obesity, hypothyroidism, major depressive disorder, bipolar disorder, generalized anxiety disorder, and panic disorder.

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

(Id.)  The ALJ found at step three that these impairments did not meet or equal a disability listing.  (Tr. at 26.)  Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with myriad further limitations.  Specifically, the ALJ found that Plaintiff

> must be able to stand for 5 minutes after sitting for 30 minutes and sit for 5 minutes after standing and/or walking for 30 minutes.  She can occasionally climb ramps or stairs; never climb ladders, ropes; or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and frequently reach, reach overhead, handle objects, and finger bilaterally.  She can have no exposure to extreme cold or extreme heat; no exposure to pulmonary irritants such as dust, odors, fumes, and gases and to poorly ventilated areas; and no exposure to unprotected heights, hazardous machinery or moving mechanical parts.  [Plaintiff's] work is limited to simple, routine and repetitive tasks but not at a production rate pace; simple work-related decisions; occasional interaction with the public; and frequent interaction with co-workers and supervisors.  [Plaintiff] would be off task no more than 10% of the time in an 8-hour workday, in addition to normal breaks (with normal breaks defined as a 15 minute morning and afternoon break and a 30 minute lunch break).

(Tr. at 28.)  Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of her past relevant work.  (Tr. at 33.)  However, he found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy.  (Tr. at 33-34.)  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act.  (Tr. at 34-35.)

Plaintiff now argues that the ALJ "erred in failing to consider the combined effect of all of [Plaintiff's] impairments as required by 42 U.S.C. § 423(d)(2)(c) in determining [Plaintiff's RFC] after finding that she would have deficits in reaching, overhead reaching and fingering related to her obesity."  (Pl.'s Br. [Doc. #17] at 1.)  After careful consideration of the record, the Court finds that substantial evidence supports the RFC as written.

As Plaintiff correctly notes,

> [u]nder 42 U.S.C. § 423(d)(2)(c), an ALJ is required . . . to "adequately explain his or her evaluation of the combined effects of [a claimant's] impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [the] claimant unable to engage in substantial gainful activity." Id.

(Pl.'s Br. at 9.) In the present case, Plaintiff contends that the ALJ failed to properly consider and account for the combined impact of Plaintiff's impairments, including her obesity, on her ability to reach, reach overhead, handle, and finger. Such consideration is specifically required by Social Security Ruling 02-1p ("SSR 02-1p"), which, as defined by the ALJ in his decision, "instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." (Tr. at 26.)[5]

Later in his decision, the ALJ's discussion of Plaintiff's obesity specifically considered Plaintiff's "physical impairments in combination with the degree her symptoms are exacerbated by obesity." (Tr. at 31); see also SSR 02-1p, 2002 WL 34686281, at *6 (noting that "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity"). Indeed, the ALJ discussed at great length the role of Plaintiff's obesity in increasing her physical limitations:

> At all times relevant to this decision, [Plaintiff] remained obese. Reports from MDSI Physician Group show [Plaintiff] diagnosed as obese, with a BMI of 58.4 (Exhibit 4F). In light of this, [Plaintiff's] difficulty with breathing, fatigue, walking, sitting, or standing for extended periods may be attributable to her weight management issues. Though there are no documented limitations

---

[5] The Court notes that on May 20, 2019, SSR 02-1p was rescinded and replaced by SSR 19-2p. Both SSR 02-1p and SSSR 19-2p provide guidance regarding the evaluation of obesity in disability claims under Titles II and XVI. In this case, the Court has cited to SSR 02-1p, in effect at the time of the ALJ's decision.

specifically attributable to [Plaintiff's] weight, the undersigned, nonetheless, finds [Plaintiff] would have limitations attributable to obesity, particularly given the reasonable likelihood of her body habitus aggravating pain of the weight bearing joints and increasing occurrences of fatigue and shortness of breath. Notably, in considering [Plaintiff's] physical impairments in combination with the degree her symptoms are exacerbated by obesity, [Plaintiff] would be restricted from performing heavier or strenuous work demands, <u>as well as work requiring excessive or prolonged use of the extremities</u>. This includes standing and walking for extended periods, frequent or continuous postural activities, <u>with the greatest deficits in climbing, and continuous reaching, handling or fingering bilaterally</u>. [Plaintiff] would also require some measure of environmental limitations to minimize exacerbation of symptoms.

The undersigned notes that [Plaintiff] testified to having multiple limitations in her pertinent levels of functioning, specifically as related to her ability to walk, stand, bend, sit for extended periods, and use and raise the left arm overhead, as outlined above. . . . However, neither the medical evidence nor [Plaintiff's] ongoing physical activity as described herein support the degree of functional deficits as alleged by [Plaintiff]. . . . Therefore, in considering the cumulative effects of [Plaintiff's] physical impairments and limitations, the undersigned finds [Plaintiff] can perform [a] reduced range of light work, as described above.

(Tr. at 30-31 (emphasis added).)

Plaintiff contends that the ALJ erred in failing to include appropriate limitations in the RFC with respect to reaching, handling and fingering. Specifically, Plaintiff contends that:

[d]espite finding that [Plaintiff] would be restricted from performing work requiring excessive or prolonged use of the extremities and that she would have deficits in continuous reaching, handling or fingering bilaterally, her residual functional capacity as determined by the ALJ included the ability to 'frequently reach, reach overhead, handle objects, and finger bilaterally.' The ALJ's failure to include a limitation on use of the upper extremities for reaching, overhead reaching and fingering despite finding that [Plaintiff] would have deficits in using her extremities secondary to her severe obesity constitutes error.

(Pl.'s Br. at 11.) However, Plaintiff's reading of the administrative decision both inaccurately paraphrases the ALJ's decision and, more importantly, ignores the plain meaning of the word <u>continuous</u>. Specifically, the ALJ found that Plaintiff's combination of impairments, including obesity, prevented her from performing "<u>continuous</u> reaching, handling, or fingering

bilaterally." (Tr. at 31.) But, contrary to Plaintiff's contention, the ALJ did not fail to include a limitation on the use of her upper extremities for reaching, handling and fingering. As set out above, the ALJ's decision ultimately limited Plaintiff to <u>frequent</u> reaching, reaching overhead, handling objects, and fingering bilaterally. Thus, the RFC reflects that Plaintiff could not perform these activities <u>continuously</u> but retained the ability to perform these activities <u>frequently</u>. (<u>See</u> Tr. at 31, 28.)[6] This determination is supported by substantial evidence in the record.[7] Plaintiff fails to explain how reducing the activities in question from continuous to frequent creates any conflicts with the remainder of the ALJ's decision or the evidence as a whole. Therefore, the Court finds that Plaintiff's contentions do not warrant remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #16] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #19] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 19th day of August, 2019.

_/s/ Joi Elizabeth Peake_
United States Magistrate Judge

---

[6] The <u>Dictionary of Occupational Titles</u> ("DOT") defines a "frequent" activity as occurring "from 1/3 to 2/3 of the time." <u>See, e.g.</u>, <u>Sizemore v. Berryhill</u>, No. 1:17CV837, 2018 WL 6529428, at *4 (M.D.N.C. Dec. 12, 2018) (defining "frequent reaching" and noting an apparent inconsistency between this restriction and a limitation to "no repetitive reaching overhead").

[7] As noted by Defendant, the state agency physicians and the consultative examiner did not assess any limitations with respect to reaching, handling, or fingering. (Tr. at 32, 81, 102, 285-86.) In addition, "Plaintiff remained able to engage in a wide array of activities that would involve the use of her upper extremities, such as knitting, using her computer and tablet, doing Sudoko puzzles, driving a car, dressing herself, washing laundry, preparing meals, vacuuming, mopping, and grocery shopping." (Def. Br. at 2 citing Tr. at 27, 30, 45, 57-61, 281.) The ALJ discussed this evidence but nevertheless limited Plaintiff to only frequent reaching, handling and fingering, in light of the combined effects of her impairments including obesity. (Tr. at 30-31.)